**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-50053
(Summary Calendar)
_____

JOYCE HUNT,

Plaintiff-Appellant,

versus

TEXAS ARMY NATIONAL GUARD,
ET AL.,

Defendants-Appellees.

_____

Appeal from United States District Court
from the Western District of Texas
(A-94-CA-550)
_____
(July 25, 1995)

Before DUHÉ, WIENER and STEWART, Circuit Judges.

PER CURIAM:[*]

Joyce Hunt filed suit against her employer, the Texas Army National Guard and several of her supervisors for monetary and injunctive relief for damages arising from alleged state and federal claims of harassment, contractual breaches, retaliatory actions, and discrimination. The district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction and denied Hunt's motion for new trial. We affirm.

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

FACTS

Captain Joyce Hunt served as a part-time General Supply Officer to the Texas Army National Guard at Camp Mabry, Austin, Texas. On or about September 17, 1989, her three year old son was involved in an accident which left him paralyzed and hospitalized for lengthy periods of time. In the first forty-one pages of the plaintiff's original complaint, Hunt's allegations include, *inter alia*, the following:

In 1990 her direct supervisor, Major Charles Johnson (Johnson), often appeared to be upset with her and accused Hunt of using her son's health as an excuse to miss drill duty.[1] She complained about Johnson's conduct to his superior and was informed that Johnson had reported deficiencies in her work and drill duty attendance. Johnson also asked Hunt to include false information in an Officer Evaluation Report on one of her subordinates and, when she detailed this situation in a written memorandum sent to Johnson and his supervisor, she was relieved of her duty to review the job performance of that subordinate officer. Johnson's supervisors defended him and refused to listen objectively to Hunt's concerns.[2] Ultimately, Johnson pressured Hunt to transfer

---

[1] Hunt alleges that Johnson had sexually harassed her in the past and that she knew from both hearsay and from personal observation that he exhibited inappropriate sexual behavior toward other African-American female soldiers. She suggests that Johnson's conduct arose from his knowledge of, and feelings about, her observations.

[2] Hunt alleges that the remaining defendants either participated in, or approved, the various incidents of harassment and the attempts to either discharge her or to pressure her into transferring from the Guard.

out of the unit.  Twice she was told that she was discharged.[3]

Although Johnson called her home several times and harassed her in a loud, rude manner about the discharge or transfer, Hunt refused to sign an OER for reassignment (discharge from the National Guard).  Hunt continued to attend drill duty;  she also continued to pursue various transfer options and sent in a school request. She was told that, at Johnson's instruction, the request was not processed because she was to be discharged.[4]  Her discharge "was denied by high headquarters due to lack of proof."  Hunt complains that she was required to take some tests earlier than were other soldiers, and she complains that she was denied the opportunity to take other tests until after others had already done so.  She also complains that, during the entire period of harassment by Johnson and his supervisors, documents which Hunt submitted were often lost or misplaced while similar documents submitted by others were not lost.  Finally,  Hunt complains that she inquired about a position with "the EEO", but was informed that it would be inappropriate for

---

[3]    Hunt alleges that in December 1990, she was informed by Colonel Henry L.S. Jezek that her job performance had been marginal, that she was being discharged from drill duty, that she was no longer needed in the National Guard, and that Johnson had told Jezek that Hunt was not doing her job.  Hunt responded by telling Jezek that Johnson was a dishonest officer.  Shortly thereafter, her position was advertised as vacant; she was removed from the unit mailing list and denied the opportunity to attend a staff meeting.
    Hunt also alleges that (1) she was informed in 1992 that another discharge was recommended; (2) a July 1992 memorandum indicated that she was placed on administrative leave and was not to attend drill duty while on such leave; and (3) she was later denied the opportunity to return to her previous position.

[4]    Hunt was eventually given a slot in the school and successfully completed the courses which she took.

her to apply for the position because she had filed a complaint with "the EEO".

Hunt filed suit in state district court against the Texas Army National Guard (the Guard) and the Adjutant General, as well as her superior officers, Major Charles "Rocky" Johnson, Colonel Richard Brito, Colonel Barry G. Ottley, Major Bobby R. Glaze, Colonel Henry L.S. Jezek, Colonel Raymond C. Peters, and Captain Thomas M. Sheffield. She alleged violations of state and federal statutes which include the following: Title VII of the Civil Rights Act; 42 U.S.C. §§ 1981 and 1983; the Texas Commission on Human Rights Act, Tex.Lab.Code.Ann. § 21.001 et seq.; the Texas Whistleblower Act; state and federal constitutional violations; breach of contract; intentional interference with contract; and other state claims such as loss of consortium, wrongful termination, and intentional infliction of emotional distress. Hunt further asserted that she is still required to report to drill duty but is required to perform no job or responsibility; thus, she has been isolated from other Guard personnel to the detriment of her military career. The defendants removed the case to federal district court on the basis of 28 U.S.C. § 1331 federal question jurisdiction. The defendants then moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), asserting *inter alia* that Hunt's claims are not justiciable in a civilian court because they involve military personnel decisions.

The district court observed that the conduct complained of in Hunts allegations "all . . . relates to her responsibilities in the

Texas Army National Guard and the decisions of officers therein", and determined that it had no subject matter jurisdiction over these claims under the principles discussed in <u>Crawford v. Texas Army National Guard</u>, 794 F.2d 417 (5th Cir. 1986; <u>Holdiness v. Stroud</u>, 808 F.2d 417 (5th Cir. 1987); and <u>Farmer v. Mabus</u>, 940 F.2d 921 (5th Cir. 1991). Hunt filed a motion for new trial which the district court denied. She appeals the district court's dismissal of her claims and its denial of her motion for new trial.

### DISCUSSION

Hunt's claims center upon the decisions, acts, and omissions of her military supervisors regarding her duties and responsibilities. She contends that, through myriad acts of harassment during 1989-1992, her supervisors sought to undermine her performance evaluations and sought to have her removed from the Guard. She requests, *inter alia*, that the defendants be ordered to compensate her for the damage done to her career, that they be punished for their harassment and its effect upon her mentally and professionally, and that they be enjoined from future such conduct. Hunt also contends that <u>Crawford</u> was wrongly decided.

We decline Hunt's invitation to reexamine the law stated in <u>Crawford</u> and <u>Holdiness</u>, and adhere to the law of <u>Freres v. United States</u>, 340 U.S. 135, 71 S.Ct. 153 (1950) and <u>Chappell v. Wallace</u>, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) as expressed in their Fifth Circuit progeny, <u>Crawford</u>, <u>Holdiness</u>, and <u>Farmer</u>. These cases express the general principle that civilian courts may

5

not sit in plenary review over intraservice military disputes.  See
Farmer, 940 F.2d at 924.

In Holdiness, we addressed the justiciability of 42 U.S.C. §
1983 claims for injuries suffered by military personnel as a result
of actions taken by their military superiors, and observed that "§
1983 does not afford a cause of action against Guard personnel for
their service-connected actions."  Holdiness, 808 F.2d at 423.  As
noted above, Hunt's claims attack the service-connected conduct of
her military supervisors.  Accordingly, we find that Hunt's § 1983
claims are not justiciable.  Likewise, Hunt's other federal claims
are beyond the proper scope of judicial inquiry because they
present a situation in which military decision making "would be
undermined by a judicially created remedy exposing officers to
personal liability at the hands of those they are charged to
command."  Chappell, 462 U.S. at 300, 103 S.Ct. at 2367.  The
remedies[5] sought by Hunt would be so disruptive to military service

---

[5]      Hunt's complaint alleged the following damages:  loss of
future earnings due to a denial of training and promotional
opportunities, and due to emotional distress; psychological trauma
and associated treatment costs; pain and suffering.  She
specifically claimed compensatory and punitive damages in excess of
two million dollars from the Texas Army National Guard, and the
individual defendants in their individual and official capacities.
She sought punitive damages to prevent future acts of "intentional,
conspiratorial and outrageous" disparate treatment.  In addition to
the compensatory and punitive damages, Hunt requested (1) that the
district court order her reinstatement "to an appropriate position
. . . free from harassment with no loss in income, in seniority,
vacation benefits, or other benefits of employment that would have
accrued to [her] but for the unjust supervisory practices"; (2)
that she be assigned to a position  with a supervisor who has a
demonstrated track record of non-discriminatory practices, a
position "in which she may receive proper training for promotional
opportunities which have been which she has been systematically
denied during her employment with the Texas Army National Guard;

that her claims should not be entertained by the federal courts. See and compare, Holdiness at 423. Because there are no justiciable federal claims presented herein, we affirm the dismissal of Hunt's remaining state claims as well as the denial of her motion for new trial.[6]

## CONCLUSION

For the foregoing reasons, Hunt's federal claims are not justiciable in the federal courts. Accordingly, we AFFIRM the judgment of the district court.

---

and (3) that the defendants be enjoined from continuing to harass, discriminate and retaliate against her.

[6] Given the non-justiciability of Hunt's claims, we do not address her remaining arguments.

7